I understand counsel have worked out an order and division of time, so you can proceed as you've provided for in your letter. Thank you, Your Honor. Anand Balakrishnan, American Civil Liberties Union. Speak right into the microphone. I'll lean in. Maybe raise the thing because you're taller. There's a button on the bottom right on the top. Oh, here it is. Sorry. Thank you. I'll lean. Anand Balakrishnan, American Civil Liberties Union, for Petitioner Serrato-Barahona. I want to address jurisdiction for both of the cases and also address the merits of Mr. Serrato-Barahona's CAT claim. Your Honors, Sano-Sakurai fundamentally changes the analysis adopted and buffeted by Patel. This panel can and should reconsider that ruling and restore the majority rule, which requires review of all claims raised against— Okay. Let me ask you, are you saying that the Supreme Court sufficiently reversed our previous decision in Patel so that we no longer need to follow it? Or are you saying that the Supreme Court in Santos went far enough along that line that we should consider getting rid of that case by either an in-bank or a mini-in-bank? Or are you arguing both? Your Honor, it's—I don't think that—Sano-Sakurai did not directly address the question presented by Patel. It did, however, make specific rulings and also adopted a mode of analysis that is fundamentally incompatible with the analysis inbuffed by Patel. I think that the court—I think that this panel— So the question is, under our rules, when something like that has happened, are we empowered to ignore a previous case? Or what do we do? Do we ask other people on the court whether they would follow it? And—or do we simply wait to see whether the Supreme Court, because there is a circuit split, if we decide against to grant cert, and if they don't grant cert, then ask to reconsider in-bank? I mean, these are all the possibilities for doing this, and I'd kind of like to know— First, this panel can reach these issues and reverse Bakhtabai Patel because of the changes made in Sano-Sakurai. Second, this— Can I just—but because of the changes in Sano-Sakurai, I think that's what— That's correct. —Racy is focusing on. What exactly is the sort of chain of reasoning that you would have us follow to do the thing that you're asking? Absolutely, Your Honor. Three points. So first, obviously, and primarily, the jurisdictional analysis has changed. Sano-Sakurai establishes that Stone's language describing the previous version of 1252b's timeline is not precedential for that purpose. It follows the analysis of Arba up to Wilkins in the last term of specifying that it is a drive-by jurisdictional ruling. You'd agree Sano-Sakurai didn't expressly overrule Stone? I'd agree that it doesn't specifically overrule Stone. The holding of Stone is still there, but it does— The Supreme Court did directly criticize Stone, which was the case that our court relied on in Patel. But that isn't the same thing as saying that Patel is wrong. That's correct, Your Honor. But I think that what's important here is the Arba line of cases, which states that a jurisdictional language can be profligate and stray. And you look to see whether the Supreme Court's language regarding jurisdiction has actually been attuned to the modern clarification of the distinction between jurisdictional and non-jurisdictional rules, particularly when that language was not pivotal or necessary to the resolution of that case. You may be right about the sort of general trend in Supreme Court precedents. But I think what Judge Calabrese's question was getting at in mind, too, is that what you're suggesting that we do is dangerous to the stability of our own court and the value and how we treat precedent. And so if it's multiple steps that you're asking us to find the reasoning is no longer valid, that's different than saying something is overruled and it's—or abrogated expressly. I think that what's different here is the fact that it's a—that the specific language was essentially identified as dicta in stone. And that's what Santos-Zachariah did. This court, in fact, has previously used that analysis from Arba to analyze Supreme Court decisions that had jurisdictional language, applied the clear statement test to decide that statutes were non-jurisdictional. Let me tell you something which may seem a little bit odd. We have many cases that go in a direction that you and the ACLU are relatively comfortable with. There are many that Supreme Court today is moving in a different direction. You would be the first to tell us that. It's a bit dangerous for us to say because the Supreme Court is moving in a different direction, we abandon the cases that you would be the first to rely on. I mean this question of relying on our previous cases is not a thing that cuts one way or another. It's something that has some merit in itself. I think here, Your Honor, the difference is that this is not a new change in the direction of the Supreme Court's jurisprudence. There's, you know, over a dozen cases from just the last decade alone that have all trended in this direction. There is no doubt that the Supreme Court has been, and I think it's wise, reducing the things that are jurisdictional. I mean there's no doubt about that. That's where we're moving. But have they moved as far as to get rid of Patel? I think, yes. I guess maybe just to sort of be a little more precise. So point one is that there's the question as to whether the deadline is jurisdictional. The second issue is the finality analysis adopted by Patel. I think at least to the first issue, the Supreme Court's language in Santos-Zachariah directly undermines the analysis or the lack of analysis that was adopted and conducted by Patel, which simply cited some previous opinions of this Court which never applied the Arma test and then directly relied on Stone for that proposition. I think on that issue, I think Santos-Zachariah is sufficiently clear. I think, however, it also goes further to reach this other issue of when a reinstated decision becomes final. And I'd be willing to walk through that analysis, but I just want to make it absolutely clear that particularly for these two petitioners, and you've read the briefs, in Petitioner Serrato Barahona's case, he has a very valid CAC claim, which the immigration judge erroneously does not deny for lack of acquiescence. They relied on the previous law, and the government is agreeing to waive any timeliness objection. And I think even for that narrow issue, a loan would be helpful to them as well as other litigants before this Court. And that issue was directly addressed by Santos-Zachariah when it distinguished Stone and identified it as a drive-by jurisdictional language. I'd be happy to walk through the further analysis if it would be useful for the Court. Well, you're over your time. You're reserved some time to rebuttal. We're also going to hear from you. Let me just ask you one question before you sit down. This is something that Judge Calabrese. I'm sorry. I'm sorry. There's something that touches on something that Judge Calabrese adverted to. There's clearly a circuit split on this issue. Am I correct about that? That's correct. You're right. But as I looked at the sheets, and this may not be anything you can help me with, it does not appear to me that there are any pending cert petitions on this issue. Is that right? Not to my knowledge. There may be one from the Fourth Circuit. Not that I've seen thus far, however. But there's none. And I do think, with the Court's indulgence, I think just one final point. I think the Fifth Circuit's approach was particularly probative here. The Fifth Circuit initially followed this Court's decision in Bhaktapai Patel. Immediately after Sato Sakurai came down, the Fifth Circuit reheard that decision, decided that the statute was non-jurisdictional, and furthermore retained its previous interpretation of the statute. And I think that that, along with the Ninth Circuit's example, sort of shows that lower courts, the courts of Akeel, are able to reach this issue after Sato Sakurai and its language is sufficient. We don't do what the Fifth Circuit or the Ninth Circuit do. We have our own rules about following our own opinions. Well, I guess to Judge Parker's point, I mean, that makes what you're asking us to do even more tendentious, I guess. You're asking us to jump from one side of a circuit split to the other. And in doing so, raise some questions about how we treat our own precedent. I understand the concern, Your Honor. And just one final point on this, because I know that I'm far over time. I think that there are practicality issues presented by Bhaktapai Patel. Bhaktapai Patel suggests that people are supposed to file their petitions for review after their order is reinstated, but before their freer claims have even occurred. That creates a very complicated situation for the courts that entertain those petitions and for litigants. And I think that that's one of the reasons that we're asking the panel to look at this again, particularly in light of Sato Sakurai, because these are important issues. They're grave issues of persecution and torture. And the ability to maintain practical judicial review over it is extremely important. And waiting for the Supreme Court to chime in on this may come too late. And that's one other reason for the need for a re-hearing at this point. Thank you. Thank you, counsel. Mr. Chesson? I'm sorry. If you all have agreed on a different order, it's what I have here. Just let's be clear who is speaking for whom next in view of the change in things. I will, Your Honors. Good morning. John Chesson for the petitioner, Bill McCastle-Holm, passed. Your Honor, in addition to jurisdictional argument, a major issue in this particular case is whether the petitioner was prejudiced by not receiving notice of the reasonable fear review by the immigration judge. Could I ask you to pull the microphones towards you? I don't know. I had no problem in hearing the others, but I'm having trouble with you all. Sorry, Your Honor. I'll move closer as well. Your Honor, the respondent has conceded that the petitioner in this case has a coverable constitutional argument on the basis that she did not receive adequate notice of the hearing. In addition, Your Honors, the respondent claims that the petitioner was not prejudiced by the lack of the notice, and therefore the case should be dismissed on the merits. Our argument is that had the petitioner been present for that hearing and represented by counsel, we would have been able to present an argument to the judge and potentially also presented evidence at that hearing. Now, I know statutorily and the regulations do not provide for a specific order of the hearing in reference to, you know, full hearing regarding evidence and so forth. As we did cite in our reply brief, under the Immigration Court Practice Manual, Chapter 7, it does specify that in the discretion of the immigration judge, the petitioner can provide testimony, make a statement, potentially provide other evidence at that hearing. In this case, the petitioner was deprived of that right. And I think this raises, to Your Honors, questions concerning what do you do next moving forward. This exemplifies the fact that here we have a petitioner who had a coverable claim of violation due process and would not have had any avenue to litigate that or bring that to the table. Are you saying, one, that the merits are sufficiently complicated that one can't just decide them, or are you saying also that our Patel decision did not bar jurisdiction in the cases where there is a coverable constitutional argument? Or are you arguing both? Yes, I think we would argue both, Your Honor. And in particular regarding Patel, I don't believe Patel specifically stated or raised that issue as far as whether there's an independent claim or constitutional claim. And, you know, again, in this case, the fact that- So you would read Patel as saying that there might be jurisdiction in a case where it's a coverable constitutional argument. I believe so, Your Honor. But how- Patel didn't discuss it. So how do we read it that way rather than just this is a jurisdictional issue? Because it's a constitutional issue. I know, but do we, when we read an opinion of our court, say there may have been some things which it didn't mention, and so we treat it as not having decided both? Is that- And I realize, Your Honor, it does get very messy. I think, you know, as far as trying to, you know, then create exceptions and other, you know, examples of where, you know, and first of all, you know, is there a coverable constitutional claim? But in some way, I mean, being quite direct, the way to solve both this problem and the problem that previous counsel argued would be either for the Supreme Court to come in on cert and say this is not jurisdictional, or for us in an embank or a mini-embank to say given what the Supreme Court has done, Patel should no longer govern us. I mean, that would be the normal thing for us to do, and that would solve the problem in some way that is really differential to our previous panels, but gets to the result that you are arguing is the correct result. And I believe, Your Honor, the respondent is arguing the latter, that to, you know, create or to, you know, expand the right so that, for example, again, that, you know, constitutional claims would then also be litigated and reviewed by the court. Thank you. Okay. Thank you, counsel. Thank you, Your Honor. We'll hear next from the government. May it please the court. Dawn Conrad on behalf of the United States Attorney General. I think it's important to dissect Bhaktapai Patel into two separate holdings to look at what happens here with Santos-Zachariah. First, there's the holding whether 1252b1, the 30-day time limit, is jurisdictional. In that case, we're holding that, we are arguing that Santos-Zachariah sufficiently cast doubt onto Bhaktapai Patel and other precedent of this court that that 30-day time limit is not jurisdictional. The second holding, which is when a reinstatement order becomes final for purposes of judicial review, is controlled by Bhaktapai Patel, and we would argue that this court should employ as many en banc procedures to reconsider that decision. In light of Santos-Zachariah, and also subsequently since this court was the first court to decide that issue, five other circuits have come down on a different side and argued that a reinstatement order only becomes final once withholding only or reasonable fear proceedings have concluded. In Santos-Zachariah, they made clear that there was a drive-by jurisdictional ruling in Stone about the 30-day time limit, and that was not a sufficient basis under… On the other hand, it listed a series of things that remained, and it didn't list this as remaining. So that left us in some kind of doubt as to just how far the Supreme Court was going. I mean, on the one hand, there is a difference. On the other hand, it didn't put it in those cases that are of the same. I understand, Your Honor. But I also think Santos-Zachariah, which looked at the exhaustion provision, 1252d1 instead of 1252b1, is, for all the reasons it found that the exhaustion provision was not jurisdictional, that it also supports that 1252b1 is not jurisdictional. And also Santos-Zachariah directly criticized Stone as being a drive-by jurisdictional ruling on timeliness. But it didn't overrule it. That's correct. It did not overrule Stone because the main holding of Stone was that you have to file separate petitions for review from motions to reopen and final suit. You suggested you should go in bank at least as to some part. You say mini in bank. Mini in bank requires unanimity. We can go in bank without it being mini. Here is my thought. Many years ago, in a case called Quill v. Vaco, which involved right to die, there was this question of whether we should go in bank or whether we should wait to see whether the Supreme Court took the case. Granted cert and decided. And there was a very interesting opinion by himself for his chambers by the then Chief Judge Newman that said, in such cases, we should wait, maybe decide the case some way, wait to see whether the Supreme Court grants cert. And if the Supreme Court grants cert, that's fine. They'll settle it. And if they don't, that's when we go in bank. That's when we try to go in bank. We then have to have a vote. Now, why wouldn't that in some way be an appropriate way of handling this? See if the Supreme Court is interested in settling this. And if the Supreme Court is not interested, then see whether our court is prepared to say, given all that has happened, that we want to reconsider Patel. I guess I'm a little... I mean, that slows things down. Right, right. Well, I would note that there is currently nothing in the Supreme Court about these line of cases. There's not been a cert petition filed from any of these cases yet. Your friend mentioned maybe the Fourth Circuit case, no? There's nothing been filed yet. We couldn't find any. We couldn't find any. We couldn't find any cert petitions. But of course we're capable of finding as well. That's correct. But there is... Well, I mean, generally in these cases the government is the prevailing... Well, if the government is the prevailing party because there would result in a dismissal for lack of jurisdiction, it would be on the petitioner to file the cert petition. Yeah, it wouldn't be you. It would be them. That's correct. But I guess, are you proposing that the court would hold these cases in abeyance pending a Supreme Court action? No, if we held it in abeyance, then it would have to be somebody else who would decide. We would have to decide and decide that we are currently bound by our Patel decision and that we are holding the mandate until we see whether the Supreme Court grants cert. And if the Supreme Court doesn't grant cert, we will then consider, having held the mandate, whether we want to overturn our prior decision by an embed, which we may or may not do. Of course, that's always up to the full court. And the other thing, pardon for interrupting, to factor into when you respond to Judge Calabresi's question is that there's a queue behind this court and behind this case. Yeah. And folks' ability to, in those cases, folks' ability to remain in this country is uncertain. Can I ask about that, actually? What's the government standard for waiving untimeliness here? I mean, even if it weren't jurisdictional, it would still be mandatory claims processing, and so I'm not clear what's going on. So, yes. So, in these cases, we took the position that we waived the 30-day because our position, you know, is now that it's mandatory and not jurisdictional. And we're waiving it in these cases because, of course, these petitioners did not know at the time the reinstatement order was issued, which came out before Bhaktapai Patel, that they had to file within 30 days of that decision. So, the government plans to decide waiver on a case-by-case basis. It would just look at the underlying facts of the cases for all future. So, what would the future standard be? I mean, I understand what you just said about these particular petitioners. Right, right. Probably, I mean, I think we would pretty vigorously enforce it in regular 240 proceedings where there is a direct appeal from a Board of Immigration's appeals decision because they would obviously know that they had 30 days to file. I mean, it would just be on a case-by-case basis and whether there was a manifest injustice. And here you say that because of how these cases came up, you think it is appropriate to waive. But having waived, you waived. Correct. I mean, there was a decision I wrote a long time ago saying it's not jurisdictional, but it's mandatory. They didn't waive, and so that's it. But that isn't this case. That's correct. And to return to your question about whether the court should wait until there is a cert petition in these cases, I mean, obviously, this court can proceed how it decides is best. I mean, we would argue that it doesn't need to wait, that it can decide these either on its mini en banc or — You think that Santos is clear enough that we can say — Correct. To at least determine that 1252B1 is a mandatory claims processing rule, not jurisdictional. I mean, would you agree that that involves some forecasting by us of what the Supreme Court would do that it has not yet done? Well, the court hasn't addressed that statute specifically, but all of the recent case law since Arbaugh on indicates that it is going to find that it is mandatory. I understand. And you may well be right about that, but it hasn't said so. It hasn't said specifically. Exhaustion and timeliness. And it did not list, as Judge Kelly-Gracy noted, D1 or B1 among the things, examples of clearly not jurisdictional. I don't know. It listed statutes that were clearly jurisdictional. And it did not list B1 in that. Yes. The Supreme Court has also said very clearly, quite fiercely by Justice Scalia a long time ago, don't tell us where we're going to go. Wait for us to go there. I mean, and that was in cases where some justices said they'd changed their mind. It was apropos of a prior case which said where we did that in the time that was all right. The court has been very fierce about saying don't predict us. I understand, Your Honor, but I would say that the current, all the history since 2016 cases. You say this is so clear. This one is very, there is no clear statement analysis regarding 1252B1. Can I just address very briefly the constitutional claim issue? Briefly, go ahead. I just want to say that I do think Bhaktapai Patel was an as-applied analysis in that case and did not consider whether any petitioner could possibly raise a constitutional claim in their withholding only or reasonable fear proceedings, which as Bhaktapai Patel recognized will mainly conclude after their, the time limit to file a petition for review after their reinstatement proceedings. And I do think Ms. Castajon's case demonstrates that you can raise a colorable constitutional claim. And even more so with withholding only proceedings, there could be situations where a petitioner is deprived of the right to counsel before the IJ and the board. And under Bhaktapai Patel, if that means no constitutional claims, then they would not be allowed to present that claim. And just to be clear on the finality analysis of Bhaktapai, you're just asking us, you're just disagreeing with it and saying that we should mini-embank. Yes, and that you should follow the other five circuits that have found its final. All right. Thank you, Your Honor. Thank you, counsel. Next we'll hear from Mr. McOtter. Thank you, Judge, and may it please the court. Trent McOtter for Amicus, America First Legal Foundation. The precedent requires dismissal of these two petitions. The parties are asking the court not just to overrule Bhaktapai Patel on the jurisdictional issue, but really to overrule the Supreme Court itself in Stone, which issued a directly applicable decision on whether the INA's filing deadline is jurisdictional. And, of course, this court cannot assume that the Supreme Court would overrule that decision if given a chance. You've had an opportunity to read Santos, right? Yes, Judge. Yes, Judge. I just wanted to be sure. And the way that we would frame the issue, Judge, is that what the Supreme Court has said is going forward, here's the framework for deciding whether a provision is jurisdictional. What the Supreme Court has not said is how the lower court should address the Supreme Court's prior holdings on specific statutes. So the Supreme Court has said this specific statute is jurisdictional, and there may be reasons, if the Supreme Court got the issue back again, that they would stick to that. For example, statutory stare decisis. I hear what you're saying. I just don't. The notion that it is because of Stone or the Supreme Court in Santos has specifically said Stone ain't very good is a weaker argument than the argument that they haven't specifically dealt with the issue in this case. And I think our argument would be that perhaps Stone is not good law for the vast majority of statutory provisions, but we know that it must be good law for the one provision that Stone itself addressed, which was 1252b1. What would you have us do here? I'm going to be sure I'm very clear on that. The court should say that Stone v. INS is still binding on 1252b1. Only the Supreme Court can overrule it, and even though the Supreme Court has certainly cast doubt on it, that decision must be made by the Supreme Court itself. Why would we go to a Supreme Court decision when we have a decision of our court that is directly in point and has not been overruled by the Supreme Court? We're not in the habit of citing the Supreme Court when we have cases in ours. Indeed, if there's a Supreme Court decision but no decision of our court, we can't issue a summary order. We have to issue an opinion of our court saying that it applies to the Supreme Court. That's just the way procedure works. We are bound by previous precedents of our court, and our precedents follow the Supreme Court. You'd like us to cite the Supreme Court because you'd like us to cite the Supreme Court. Good for you. But that's not my job. My job is to follow my court. Well, I think that's an extra point in our favor, which is that regardless of what one may think of Stone, Bhakpati Patel is still binding on that point in our view. And on this question of Santos-Zakaria, at page 420, it lists other provisions that it claims are, quote, non-jurisdictional and conspicuously absent, 1252b1. Although it does list the very next subsection, 1252b2. So if it were so obvious the Supreme Court had changed its mind, even on the provision at issue in Stone, I think they probably would have listed 1252b1. I think they were reserving the issue because, in fact, Stone is still binding on that point, and they may change their mind down the road. And, in fact, at least six circuits, including this one, have said after Santos-Zakaria that that provision remains jurisdictional. Some of those were unpublished opinions, to be clear, but at least six circuits have said that. The Fourth, Seventh, and Eleventh have specifically said Stone is still binding even after Santos-Zakaria. So there is a circuit split. There is definitely a circuit split. The Ninth Circuit has gone the other way. The Fifth Circuit has inconsistent case law, so I'm not counting them on your side. Well, most recently, when you get the Fifth and the Ninth agreeing on something, it's a rather remarkable state of affairs. True. Although, as we point out in our amicus brief, the Fifth Circuit seems to be a little inconsistent. They have a subsequent decision unpublished that says actually 1252b1 is still jurisdictional. So that's on the jurisdictional question, and on the— Would you concede that there's some tension between Patel and Santos? On the jurisdictional issue? Yeah. I think that's fair, but I would also say that until the Supreme Court overrules Stone, then 1252b1 must be treated as jurisdictional. The Supreme Court said this. They've said when we have a directly applicable decision like that, even when we have other decisions later that seem to undercut it, the lower courts have to stick with that directly applicable one. But based on your study of this information, do you believe that Patel's jurisdictional analysis is now correct? It's correct given Stone, yes. And I think that— I'm sorry. I was rude. I asked you a question and then interrupted you when you were answering. I was just going to say, given Stone, yes, Bakhbatai Patel is right because, in our view, Stone is still binding. Maybe the question is if the Supreme Court has just never issued Stone, the Supreme Court never had an opinion on 1252b1 and whether it's jurisdictional, then would we think that it's jurisdictional? It would be a harder case, certainly, but I'd also point out that the Supreme Court hasn't overruled Bowles v. Russell, which is the timeline to appeal from a district court to a circuit court. That one's been longstanding. Nobody really questions that one. It's a very similar idea. Timelines might still be jurisdictional, but, again, all that's kind of hypothetical because the Supreme Court said it. That was the Supreme Court. It's really—the Supreme Court has addressed it. With the Court's indulgence, may I just briefly address, though, withholding only? Briefly. Issue. So Bakhbatai Patel did not fail to anticipate colorable constitutional claims. At page 411, it says, Illegal reentrance lack colorable due process claims in the context of withholding only decisions. That's a holding. It's not failing to anticipate anything. It doesn't list any exceptions. The Court obviously need not reach those issues given that, in our view, the Court should dismiss blockage jurisdiction. But I did want to briefly address that one point. Thank you. Thank you, Counsel. And we'll hear rebuttal. Thank you. Ahmed Balakrishnan, ACLU. I'll be brief. I wanted to make two points. The first is to take another shot at Santo Zechariah and Stone with the Court, which is that Santo Zechariah, I think, the clearest way of reading it, is identifying the language from Stone describing the timeline as jurisdictional, as non-precedential. Clearly, the Supreme Court has not ruled at this point on whether the timeline is jurisdictional. At this point, unlike in Bhakta Bhai Patel, this Court is presented with a clean slate. The question isn't whether you're anticipating what the Supreme Court might do. That's, of course, an issue in any case where there's no precedent on point. This Court is still—it's incumbent on this Court to assess its jurisdiction. I think that's a fundamental attribute of Article III. And I think given the clean slate after Santo Zechariah and the fact that this Court incorrectly relied on the now repudiated language and has never fully interpreted the statute under the governing test adopted by the Supreme Court, it is free to do so now and should do so now. It's a clean slate except for our own precedent that is on all fours. I understand. But that precedent, however, under this Court's own sort of rules for when it can revisit precedent in light of an intervening Supreme Court case, this meets that situation. Because this is—this Court has even said it. It's phrased the test in a different way. It just strikes me as dangerous if we start saying that the reasoning from this provision, which is applicable here, is sufficient to say that that precedent is deemed no longer valid. And so I am concerned about the implications of your argument for the stability of our precedent and how we rely on it. So your position essentially for somebody like me who agrees, I think, with where the Supreme Court is going, thinks the Supreme Court will go there, sees that we have a precedent to the contrary. What I should do now, do I say that the Supreme Court has done enough to undercut our precedent so that I don't need to follow it as an individual panel? Or do I ask to set up a way in which our Court, in its proper procedure, by embankment review, if it chooses to do so, gets rid of a precedent that I probably believe the Supreme Court would not adhere to now? That's my question. And there we are. I'll do the best I can. I understand, Your Honor. And I know my time is out. Briefly go ahead and respond. I think that, again, the situation is that this situation meets the Court's rules for when it can revisit prior decisions. And so the panel can do so. The panel could, of course, go en blanc as an alternative. I think that this does meet the situation. This is not a subtle change in the law. It is not tangential to the jurisdictional portion of Bhakta Bhai Patel. And this Court, outside of Bhakta Bhai Patel's reliance on Stone, has never followed the Supreme Court's rulings, not just from Santos-Sakurai, but going all the way back to Arba when interpreting the petition for review deadline. So I think that the framing I'm proposing for this is that there is no Supreme Court precedent. The Supreme Court has said there is none, and the Court is working on a blank slate. And with that, Your Honors, unless there's any further questions, Beth. Thank you.